## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**SAMUEL MASON**
18011 O'Hara Circle
Olney, Maryland 20832

    *Plaintiff*,

*v.*

    Civil Action No. _____

**NETCOM TECHNOLOGIES, INC.**
7676 Standish Place
Rockville, Maryland 20855

    **SERVE ON:**
    Jason D. Smolen
    7124 Armat Drive
    Bethesda, Maryland 20817

    *Defendant.*

## COMPLAINT AND JURY DEMAND

Plaintiff Samuel Mason ("Plaintiff" or "Mr. Mason"), by and through his undersigned counsel, James M. Ray. II and Ray Legal Group, LLC, hereby files suit against Netcom Technologies, Inc. and states as follows:

## THE NATURE OF THE ACTION

This is Plaintiff's civil action against Netcom Technologies, Inc., seeking damages and/or other legal relief for the Defendants' violation of Mr. Mason's rights under the False Claims Act retaliation provisions, codified at 31 U.S.C. § 3730(h).

## THE PARTIES

1. Plaintiff Samuel Mason is a Maryland citizen and a resident of Montgomery County, Maryland.

2.      Defendant Netcom Technologies, Inc. (the "Defendant" or "Netcom") is a Maryland corporation with its principal office located in Montgomery County, Maryland.

3.      The Defendant, at all times, was acting through its employees, servants, agents, or other affiliates as to the matters alleged herein.

## JURISDICTION & VENUE

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

5.      The Plaintiff's cause of action is authorized by 31 U.S.C. § 3730(h).  The Plaintiff has a right to jury trial.

6.      Venue is proper in this District under 28 U.S.C. § 1391, where a substantial part of the events giving rise to Plaintiff's claims occurred, and where the Defendant resides.

7.      The Plaintiff has complied with all conditions precedent, administrative requirements, and/or legal preconditions to properly file and pursue this civil action and has exhausted any and all required administrative remedies.  This civil action is lawfully filed in this Court.  All conditions precedent have occurred or been performed.

## FACTS COMMON TO ALL COUNTS

8.      In August of 2017, Mr. Mason became employed by the Defendant as a Lead Technician.

9.      In September 2018, the Defendant assigned Mr. Mason to work at the Washington Navy Yard.  At the Washington Navy Yard, Mr. Mason installed CAT 5 fiber cable and an emergency alert system made by Alertus Technologies ("Alertus").  The Defendant was a subcontractor for Alertus under a contact between Alertus and the United States Government/DOD to install Alertus' emergency alert system at the Washington Navy Yard.  Alertus' contract with the United States Government, and the Defendant's subcontract with Alertus, were subject to the

provisions of the McNamara-O'Hara Service Contract Act of 1965 ("the SCA"), codified at 41 U.S.C. §§ 6701–6707.   Under § 6703, "[t]he contract and bid specification shall contain a provision specifying the minimum wage to be paid to each class of service employee engaged in the performance of the contract or any subcontract, as determined by the Secretary or the Secretary's authorized representative, in accordance with prevailing rates in the locality, or, where a collective-bargaining agreement covers the service employees, in accordance with the rates provided for in the agreement, including prospective wage increases provided for in the agreement as a result of arm's length negotiations.   § 6703(1) (emphasis added).

10.     The Defendant failed to pay Mr. Mason and other cable technicians the "prevailing rate[] in the locality" as required by the SCA.   The "prevailing rate" for the work being performed by Mr. Mason in the Defendant's employ was $29.31/hour, but the Defendant only paid Mr. Mason at the rate of $23.00/hour and similarly paid other employees less than the "prevailing rate[] in the locality."

11.     Beginning in November 2018, Mr. Mason and other technician employees began asking their managers whether the work being performed by them should be paid at the prevailing wage scale because the work was being performed under a federal contact and at the Washington Navy Yard.   Mr. Mason and the other technician employees did not receive any clear response from the Defendant; in one instance, Mr. Mason asked Mike Gammell, the Defendant's Chief Sales Officer, about the scale pay rate for the Washington Navy Yard job; Mr. Gammell responded by chuckling and saying that Mr. Mason should ask Ryan Rea (the Defendant's Chief Operating Officer).   Because of the lack of response from the Defendant, Mr. Mason contacted the Department of Labor, which is responsible for enforcement of the SCA.   *See* § 6705 (Recovery of amounts underpaid to employees); § 6707 ("Sections 6506 and 6507 of this title govern the

Secretary's authority to enforce this chapter, including the Secretary's authority to prescribe regulations, issue orders, hold hearings, make decisions based on findings of fact, and take other appropriate action under this chapter."); § 6701(2) ("The term 'Secretary' means the Secretary of Labor.").

12.     Mr. Mason completed his work at the Washington Navy Yard in approximately March 2019 while the Department of Labor investigation was continuing.  The Defendant assigned Mr. Mason to another location at the Montgomery County school system.

13.     On September 24, 2019, the Defendant's management met with the foreman and Lead Technicians.  During the meeting, the issue of scale paying jobs was mentioned.  At that point, Roy Rea, the Chief Executive Officer, began making derogatory and disparaging remarks directed at Mr. Mason.  Roy Rea stated, "Sam, I have no animosity," in front of others, suggesting that Mr. Mason had done something inappropriate.  Mr. Roy Rea's comments were recognized by other Netcom employees as unusual; Teresa Fredericks, who was Mr. Mason's Project Manager, asked Mr. Mason the next day, September 25, 2019, "Why did Roy keep mentioning your name? Why did he say that he had no animosity toward you, but kept bringing up your name?"

14.     Although Mr. Mason was not aware of the status of the Department of Labor's investigation, Mike Gammell stated during the September 24, 2019 meeting that Mr. Mason and the other employees would receive their back pay within a few days, which did not occur.

15.     The Department of Labor determined that the Defendant had not paid Mr. Mason and the other employees the "prevailing rate" as required under the SCA for the period from September 1, 2018 through October 12, 2019.  On November 19, 2019, the Defendant paid Mr. Mason gross wages in the amount of $5,340.69.  The Defendant, through its then Human Resources Manager, certified to the Department of Labor that the awarded amount had been paid

to Mr. Mason.  The Defendant, through its then Human Resources Manager, also certified "that I have not and will not retaliate against the above-named employee for accepting this payment and I have not and will not ask the employee to return all or part of this payment to me."

16.     The Department of Labor also awarded back pay to the other technicians who worked for the Defendant at the Washington Navy Yard.

17.     On November 25, 2019, only six (6) days after Mr. Mason received the amounts awarded to him by the Department of Labor for the Defendant's violation of the SCA, the Defendant terminated Mr. Mason's employment.  The November 25, 2019 termination letter states, "We have carefully reviewed the business direction that we believe we are best suited to pursue.  That review has determined that the services you provide will no longer be needed."

18.     The Defendant's termination of Mr. Mason's employment was in direct retaliation for Mr. Mason's inquiries about the pay scale, his contacting the Department of Labor directly about the Defendant's violation of the SCA, his participation in the Department of Labor investigation, and, ultimately, his (and others) successfully obtaining and being paid back wages owed by the Defendant.

19.     Prior to his termination, Mr. Mason received favorable performance reviews from the Defendant.

<u>**COUNT I**</u>
**Retaliation in Violation of 31 U.S.C. § 3730(h)**

20.     The Plaintiff incorporates the preceding paragraphs as if set fully herein.

21.     31 U.S.C. § 3730(h) provides  that "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts

done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter [of the False Claims Act, 31 U.S.C § 3729, *et seq*.]." 31 U.S.C. § 3730(h)(1).

22.     The Defendant violated the False Claims Act by submitting false and fraudulent billing directly to the United States Government, or indirectly through Alertus, seeking payment of work performed by Mr. Mason and other employees at the prevailing wage rate while paying Mr. Mason and the other employees at a lower wage rate.  The Defendant also violated the False Claims Act by representing and certifying directly to the United States Government, or indirectly through Alertus, that Mr. Mason and the other employees were being paid at the prevailing wage rate as required by the SCA.

23.     Mr. Mason engaged in efforts to stop one (1) or more violations of the False Claims Act when making inquiries with the Defendant, and complaining, about the prevailing pay rate at the Washington Navy Yard, by contacting the Department of Labor concerning the Defendant's failure to pay the prevailing wage rate required under the SCA, and by participating in the Department of Labor's investigation.  Mr. Mason had an objectively reasonable belief that the Defendant was violating the False Claims Act and Mr. Mason's actions were designed to stop the Defendant's fraudulent actions.  Accordingly, Mr. Mason was engaged in protected activity.

24.     The Defendant knew about the protected activity undertaken by Mr. Mason, including his inquires and complaints made directly with the Defendant, his contacting the Department of Labor, his participation in the Department of Labor investigation, and the award of back pay by the Department of Labor shortly before the Defendant terminated Mr. Mason's employment.

25.     The Defendant terminated Mr. Mason's employment as a direct result of Mr.

Mason's protected activity.

26.    Under 31 U.S.C. § 3730, an employee "shall be entitled to all relief necessary to make that employee, contractor, or agent whole [including] reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees."

WHEREFORE, Plaintiff Samuel Mason respectfully prays that this Court grant the following relief:

a.    Compensation for back pay, front pay, and compensation for other lost employment benefits, liquidated damages, compensatory damages, and costs and reasonable attorneys' fees against the Defendant in the amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

b.    Reinstatement; and

c.    Any and all additional relief as the Court may deem just and proper.

Respectfully Submitted,

**RAY LEGAL GROUP, LLC**

By:   /s/ James M. Ray
James M. Ray, II (#012773)
jim.ray@raylegalgroup.com
8720 Georgia Avenue, Suite 803
Silver Spring, Maryland 20910
Phone: (301) 755-5656
Fax:    (301) 755-5627

*Attorneys for Plaintiff*

## **PRAYER FOR JURY TRIAL**

Plaintiff Samuel Mason demands a trial by jury as to all issues so triable.


   /s/  James M. Ray, II
James M. Ray, II