**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **SAMUEL MASON,** | * | |
| *Plaintiff,* | * | |
|  | * | Case No.: 8:20-cv-03558-PWG |
| v. | * | |
| **NETCOM TECHNOLOGIES, INC.** | * | |
| *Defendant.* | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samuel Mason, through counsel, filed this suit against his former employer, Netcom Technologies, Inc. ("Netcom"), pursuant to the False Claims Act (FCA), 31 U.S.C. § 3730(h). ECF 10, Amend. Compl. Netcom has moved to dismiss Mr. Mason's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), claiming that Mr. Mason failed to sufficiently plead any of the three necessary elements of an FCA retaliation claim. ECF 11-1, Def. Mot. Mem., 1–3. Mr. Mason contends that all elements are sufficiently pleaded under Fed. R. Civ P. 8(a)'s pleading standard and that his Amended Complaint should survive Netcom's motion to dismiss. ECF 12, Pl. Mot. Mem, 1, 7. For the reasons that follow, I find that Mr. Mason has adequately pleaded his FCA claim in his Amended Complaint. Accordingly, Netcom's motion to dismiss is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Netcom served as a subcontractor for Alertus Technologies "under a contract between Alertus and the United States Government/DOD to install Alertus' emergency alert system at

1

Washington Navy Yard." Amend. Compl. ¶ 9. Netcom employed Mr. Mason as a Lead Technician and assigned him to perform the installations at Washington Navy Yard in September 2018. *Id.* ¶¶ 8–9.

Alertus's contract with the United States Government and Netcom's subcontract with Alertus were both required by the McNamara-O'Hara Service Contract Act[1] ("SCA") to include provisions setting a minimum wage "in accordance with prevailing rates in the locality" for employees performing under the contract. *Id.* Mr. Mason and other cable technicians were paid less than the prevailing rate. *Id.* ¶ 10. In November 2018, Mr. Mason alleges that he and other technicians asked their managers about whether they "should be paid at the prevailing rate scale because the work was being performed under a federal contract at the Washington Navy Yard." *Id.* ¶ 11. Netcom did not provide any clear response to their inquiries. *Id.* ¶ 11. Mr. Mason subsequently contacted the Department of Labor ("DOL"), which enforces the SCA, and complained that Netcom was violating the SCA's prevailing rate requirement. *Id.* ¶ 11, 14.

Mr. Mason alleges that he learned from a colleague in August 2019 that the Department of Labor had conducted an investigation and found that Netcom owed backpay wages to Mr. Mason and other employees. *Id.* ¶ 13–14. Mr. Mason further alleges that Netcom was aware by no later than August 2019 that Mr. Mason had complained to the DOL. *Id.*

In a meeting on September 24, 2019, Netcom management informed Mr. Mason and other Lead Technicians they would be paid the backpay owed as a result of Netcom's failure to comply with the SCA's prevailing rate requirement. *Id.* ¶¶ 15–16. Mr. Mason alleges that at the meeting, Netcom's Chief Executive Officer, Roy Rea, made "derogatory and disparaging remarks" towards Mr. Mason including commenting, "Sam, I have no animosity." *Id.* Mr. Mason alleges this remark

---

[1] 41 U.S.C. § 6703.

"suggests" that Mr. Rea believed "that Mr. Mason had done something inappropriate," and specifically that Mr. Rea made this comment because he was aware that Mr. Mason had complained to the DOL. *Id.*

Mr. Mason received his backpay on November 19, 2019. *Id.* ¶ 17. Six days later, on November 25, 2019, Netcom terminated Mr. Mason's employment despite having previously given Mr. Mason positive performance reviews. *Id.* ¶ 19, 21.

Mr. Mason alleges that his termination was in direct retaliation for asking his management about the prevailing payment rates, and for his complaint to the DOL, which resulted in the DOL investigation and ultimate finding that Netcom violated the SCA. *Id.* at ¶ 20.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, the plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Well-pleaded facts as alleged in the complaint are assumed to be true. *Aziz v. Alcolac*, 658 F.3d 388, 391 (4th Cir. 2011). And factual allegations are construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)). Conversely, "statements of bare legal conclusions

are not entitled to the assumption of truth and are insufficient to state a claim." *Aziz*, 658 F.3d at 391 (internal quotation and citation omitted).

## DISCUSSION

The FCA forbids retaliation against employees for "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). There are three elements to an FCA retaliation claim: "(1) [the employee] engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018). Netcom alleges that Mr. Mason has failed to sufficiently plead all three elements. Def. Mot. Mem., 5. I examine each element in turn.

### A. Protected Activity

Section 3730(h) provides for "two types of protected activity—acts 'in furtherance of an [FCA action]' (the 'first prong'), or 'other efforts to stop 1 or more [FCA violations]' (the 'second prong')." *Grant*, 912 F.3d at 200 (quoting § 3730(h)(1)). I will limit my analysis to the second prong, which is the only prong under which Mr. Mason alleges that he engaged in protected activity. Pl. Mot. Mem., 8. Under the second prong:

> [A]n act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA. A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA.

*Grant*, 912 F. 3d at 201–02. Even if the purported protected actions do "not 'lead to a viable FCA action'," they must "have a nexus to an FCA violation." *Id.* at 202.

Netcom argues that Mr. Mason asking his employer about the prevailing wage rate requirement and complaining to the DOL were not protected activities because Mr. Mason did not

4

raise any issue of fraud or illegality. Def. Mot. Mem., 7–8. "Nowhere in the Amended Complaint," Netcom argues "does [Mr. Mason] allege he told anyone that Netcom was defrauding the U.S. Government, that it was violating the FCA, or that he was attempting to stop FCA violations or even fraud generally." *Id.* at 8. In other words, Netcom asserts that Mr. Mason's complaint to the DOL was solely due to his concerns about receiving proper payment under SCA, not concerns about Netcom committing a fraud, and that such "generalized concerns about perceived contract or regulatory violations" are not protected activities under the FCA. *Id.* at 8 (citing *Owens v. First Kuwaiti Gen. Trading & Contr. Co.*, 612 F.3d 724, 735 (4th Cir. 2010).

In support of this argument, Netcom primarily cites Fourth Circuit authority that predates its decision in *Grant*, 912 F.3d at 190. *Grant* explains that a different standard applies to the two "prongs" of protected activity under § 3730(h). Protected activity under the first prong (lawful acts done by the employee . . . in furtherance of an [FCA] action") is subject to a "distinct possibility" standard, under which an employee engages in protected activity only where "litigation is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when ... litigation is a reasonable possibility." *Id.* The second prong ("other efforts to stop FCA violation"), however, is subject to an "objective reasonableness" standard, which requires only that an employee's actions be "motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA" to constitute protected activity. *Id.*

Mr. Mason asserts that his Amended Complaint contains sufficient factual allegations to meet the "objective reasonableness" standard. Pl. Mot. Mem., 12. Furthermore, Mr. Mason argues that the law does not require him to "have actual knowledge of the FCA for [his] actions to be considered 'protected activity' under § 3730(h)," *id.* at 13 (quoting *Fanslow v. Chicago Mfg. Ctr.,*

5

*Inc.*, 384 F.3d 469, 479 (7th Cir. 2004)), provided that his actions had a "nexus" to the alleged FCA violation. *Id.* at 15 (quoting *Grant*, 912 F.3d at 202).

I agree that Mr. Mason has sufficiently pleaded the protected activity element in his Amended Complaint. Mr. Mason alleges he asked his management about being underpaid for work under a federal contract that required payment at a prevailing wage. Amend. Compl. ¶¶ 9–11. Mr. Mason further alleges that his managers gave him no clear response and instead directed him with a "chuckl[e]" to speak to Netcom's COO.[2] *Id.* Taking those allegations as true, Mr. Mason may have reasonably inferred from that conversation that Netcom's failure to pay the prevailing wage on a government contract as required by law constituted fraud against the U.S. Government. Mr. Mason then took action to stop the FCA violation by complaining to the DOL[3], which had the power to enforce, and after an investigation did enforce, the SCA. *See* Amend. Compl., ¶¶ 11, 17.[4]

---

[2] The Amended Complaint alternately identified Mr. Rea as Netcom's CEO and COO. Amend. Compl. ¶¶ 11, 15.

[3] On the record presently before me, however, Mr. Mason's inquiries to Netcom management on the applicability of the prevailing rate scale do not constitute protected activity. Merely inquiring about the pay scale is not sufficiently "designed to stop those fraudulent actions." *See Grant*, 912 F.3d at 201–02. Indeed, in his memorandum in opposition, Mr. Mason even appears to describe these activities as an "attempt[] to investigate the matter," Pl. Mot. Mem, 13, rather than as part of an act to "raise concerns about this practice" in "'efforts to stop' a potential FCA violation." *Grant*, 912 F.3d at 202.

[4] Courts have found that a plaintiff successfully pleaded an FCA retaliation claim under similar circumstances. *See, e.g., Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 428–29, 433–34 (4th Cir. 2015), (accepting the district court's assumption that protected activity was met, with no further analysis, where plaintiff contractor complained to the DOL after being paid less than prevailing rate requirements on government contract work); *United States ex rel. Oldham v. Centra Health, Inc.*, No. 6:18-CV-00088, 2021 WL 2910942 at *2, *5 (W.D. Va. July 12, 2021) (finding that the plaintiff engaged in protected activities by reporting that the defendant improperly overused diagnostic equipment against protocols and for a fraudulent purpose and that the plaintiff made "enough factual allegations to make an inference that [plaintiff] reasonably believed [defendant] was violating the FCA, and that he took steps to . . . stop the violations"); *Baldwin v. Corecivic of Tennessee, LLC*, No. 18-2390-JWB, 2020 WL 1952521 at *7 (D. Kan. Apr. 23, 2020) (finding a DOL complaint that defendants had breached a government contract, where payment to defendants was contingent on representations of compliance, "was made in connection with a

Accordingly, Mr. Mason has pleaded sufficient facts to support the reasonable inference that he reasonably believed there was a potential FCA violation, and that he took actions to stop that violation by complaining to the DOL.

**B. Employer Knew About the Protected Activity**

Next, Mr. Mason must "plausibly aver" that Netcom knew about Mr. Mason's protected activity. *United States ex rel. Potter v. CASA de Md*, No. CV PX-16-0475, 2018 WL 1183659, at *8 (D. Md. Mar. 6, 2018). "This element is met when the employee's words and acts are sufficiently suggestive of fraud or falsity such that the employer knew or should have known that FCA litigation was a reasonable possibility." *Id.* (internal quotations and citations omitted).

Netcom argues that, because Mr. Mason only inquired about the prevailing rate requirement and did not raise any concerns about a violation of law or the FCA, his activity was insufficient to alert Netcom to a potential FCA action. Def. Mot. Mem, 8–10. Netcom also argues that Mr. Mason has not pleaded facts that suggest anyone at Netcom knew that it was Mr. Mason who complained to the DOL, and that his allegations regarding Netcom's knowledge of his actions are conclusory. *Id.* at 10–11. Mr. Mason counters that Netcom knew that Mr. Mason made the complaint that led to the DOL investigation as evidenced by his earlier conversations with management and the comments Netcom's CEO made to Mr. Mason during a meeting addressing the employees' receiving backpay. Pl. Mot. Mem., 15.

I find that Mr. Mason has sufficiently pleaded facts to satisfy the second element of an FCA claim. Mr. Mason alleges that he asked Netcom about its failure to pay the prevailing wage for government contract work before complaining to the DOL. Amend. Compl., ¶¶ 10–11. Several

---

claim that could have ripened into an FCA claim, sufficient to create a genuine dispute of fact as to whether [plaintiff's] conduct is protected from retaliation under the Act").

7

months later, Mr. Mason was informed by a colleague that the DOL had conducted an investigation and found that Netcom owed its employees backpay. *Id.* ¶ 13. Next, Mr. Mason alleges that, when the issue of backpay was discussed at a meeting with Netcom, Netcom's CEO made "derogatory and disparaging remarks" about and toward Mr. Mason. *Id.* at ¶ 15. He alleges that one of his colleagues noted that the CEO's behavior toward Mr. Mason was unusual. *Id.* at ¶ 17. Accepting those allegations as true and construing them in the light most favorable to Mr. Mason, it is reasonable to infer that Netcom was aware that it was Mr. Mason who had made the complaint that led to the DOL investigation. Mr. Mason thus pleads sufficient facts to suggest that Netcom "knew about [his] protected activity." *Grant*, 912 F.3d at 200.

Mr. Mason has also pleaded sufficient facts to suggest that Netcom "knew or should have known that FCA litigation was a reasonable possibility," once it became aware of the DOL complaint/investigation and Mr. Mason's involvement. *CASA*, 2018 WL 1183659 at *8. Once Netcom was subject to a DOL investigation that it was underpaying employees as part of a government contract, it should have been on notice of possible FCA litigation with respect to the Netcom's potential alleged fraud in connection with that underpayment.

Accordingly, I conclude that Mr. Mason has sufficiently pleaded the second element of his FCA claim.

### C. Employer Took Adverse Action

Finally, to survive Netcom's Motion to Dismiss, Mr. Mason must plausibly allege that Netcom "discharged him as a result" of his protected activity. *Eberhardt*, 167 F. 3d at 866.

"An employer undertakes a materially adverse action opening it up to retaliation liability if it does something that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination." *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 434 (4th Cir.

2015). Termination is plainly within that category. But whether Mr. Mason has sufficiently pleaded facts supporting a reasonable inference that his protected activity caused his termination is a closer question.

"In a retaliation claim, causation can be inferred from a brief lapse of time between the protected activity and the adverse employment action." *Williams v. Kettler Mgmt. Inc.*, No. CIV.A. CBD-12-1226, 2013 WL 398741, at *3 (D. Md. Jan. 31, 2013) (citing *Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006)). The "temporal nexus between two events cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 161 (4th Cir. 2014) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). "Although there is no bright-line rule on the issue of temporal proximity, the Fourth Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality." *Westmoreland v. Prince George's Cty., Md.*, No. 09-CV-2453 AW, 2010 WL 3369169, at *10 (D. Md. Aug. 23, 2010).[5]

Here, the Complaint alleges that Netcom became aware that Mr. Mason submitted a claim to the DOL in August 2019 and terminated him on November 25, 2019.[6] Mr. Mason concedes that

---

[5] Netcom cites a case from the Eastern District Virginia that states: "it is axiomatic in this circuit that a gap of three months—let alone the five to six months here—between a protected activity and adverse action is too long to infer a causal nexus." *Nifong v. SOC, LLC*, 234 F. Supp. 3d 739, 757 (E.D. Va. 2017) (collecting cases). Those cases stand for the proposition that a gap in time beyond three months is insufficient to show causation *"without more."* *Id.* (citing *Perry v. Kappos*, 489 Fed.Appx. 637, 643 (4th Cir. 2012)) (emphasis added). Here, Mr. Mason presents a borderline case and provides a plausible explanation for the timeline, which at this early stage in the proceedings I must accept and construe in his favor.

[6] Netcom focuses on a different timeline, namely, the year-plus between Mr. Mason's DOL complaint and termination. Def. Mot. Mem. at 2, 3, 10–11. The operative timeline, however, is the point of the "employer's *knowledge* of protected activity" and an adverse employment action.

these allegations "stand[] on the edge of temporal proximity that courts have found sufficient to support a claim." Pl. Mot. Mem. at 18. But "other relevant evidence may be used to establish causation. Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Mr. Mason argues that there were two instances of "retaliatory animus" by Netcom. Amend. Pl. Mot. Mem. at 20. One of those two instances is identified as Mr. Mason's termination six days after he received his back pay. *Id.* at 21–22. Mr. Mason's termination, though, is the retaliatory event itself—it is not an example of retaliatory animus in the intervening period. The second instance of retaliatory animus is alleged to be Netcom's CEO's comments during a September 24, 2019, meeting in which Mr. Rea made comments directed to Mr. Mason, including the comment that he had "no animosity." *Id.* at 20–21. Mr. Mason alleges that at least one colleague noted that Mr. Rea's comments were unusual. *Id.*

Additionally, Mr. Mason provides an explanation for the three-month delay between Netcom's becoming aware of Mr. Mason's complaint to the DOL and his termination. The Amended Complaint states that Netcom deliberately waited to terminate Mr. Mason until the DOL investigation had concluded and Mr. Mason had received his backpay "in an effort to avoid further consequences that might have occurred if [] [Netcom] terminated Mr. Mason's employment" while the investigation was ongoing. Amend. Compl. ¶ 17. Netcom terminated Mr. Mason six days after paying him the backpay he was owed as required by the DOL. Amend. Compl. at ¶17, 19.

---

*Clark County Sch. Dist.,* 532 U.S. at 273 (2001) (emphasis added). Because Mr. Mason has plausibly alleged that the operative timeline in this case is three months, I accept those allegations as true for the purposes of this motion.

Construing all factual inferences in Mr. Mason's favor, it is objectively reasonable to infer that Mr. Mason's complaint to the DOL regarding Netcom's failure to comply with the SCA is causally linked to his termination.

## CONCLUSION

For the foregoing reasons, Mr. Mason has pleaded sufficient facts to support the required elements of an FCA retaliation claim. I therefore deny Netcom's Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim.

## ORDER

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF 11, is DENIED. The Defendant shall file an answer to the Amended Complaint on or before October 12, 2021. Upon receipt of Defendant's answer, the Court will issue a scheduling order and schedule a Rule 16 conference.

DATED this 21 day of September, 2021.

BY THE COURT:

　　/S/
Paul W. Grimm
United States District Judge